UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA OROZCO,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:21–cv–321–TLN–KJN<br><br>FINDINGS AND RECOMMENDATIONS<br><br>(ECF Nos. 19, 20) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income.[1] In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in failing to fully develop the record regarding her alleged mental impairments, especially given her lack of representation. The Commissioner opposed, and filed a cross–motion for summary judgment.

For the reasons that follow, the court RECOMMENDS the Commissioner's cross-motion for summary judgment be denied, plaintiff's motion be granted, and the final decision of the Commissioner be reversed and remanded for further proceedings.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15). Without the consent of all parties, magistrate judges are directed to file findings and recommendations for review by the assigned district judge. See Local Rule 304.

1

## I. RELEVANT LAW

The Social Security Act provides benefits for qualifying individuals with disabilities. Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) (Title II); 1382c(a)(3) (Title XVI). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2] 20 C.F.R. § 404.1520(a)(4).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the

---

[2] The sequential evaluation is summarized as follows:

**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

court may not reverse the ALJ's decision on account of harmless error.  Id.

## II.   BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

On November 13, 2018, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of April 28, 2017.  (Administrative Transcript ("AT") 212-15.)  Plaintiff claimed disability due to "Left side muscle atrophy-weakness and pain; Chronic pain; Chronic fatigue; Multi-joint tendinitis; Heart beat irregularities; Multiple Chemical Sensitivity; Widespread nerve pain; Difficulty walking at times; Cognitive issues from neck pain; [and] Arthritic shoulders and spine."  (See AT 63.)  Plaintiff's applications were denied initially and upon reconsideration.  (AT 122-23; 158-59.)  Plaintiff sought review of these denials with an ALJ.  (AT 174.)  At a July 2020 hearing, the ALJ reminded plaintiff she had the right to be represented, but plaintiff wanted to proceed without representation.  (AT 46.)  Plaintiff testified about her conditions, and a vocational expert ("VE") testified regarding the ability of a person with impairments found by the ALJ to perform various jobs.  (AT 43-61.)

On August 4, 2020, the ALJ issued a decision determining plaintiff was not disabled.  (AT 27-37.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since April 28, 2017.  (Id.)  At step two, the ALJ determined plaintiff had the following severe impairments: multiple chemical sensitivity, seizure disorder and migraines.  (Id.)  At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1.  (Id., citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except she "must avoid hazards such as unprotected heights and dangerous moving machinery; [and] must avoid concentrated exposure to dust, fumes, odors, gases and pulmonary irritants."  (AT 30.)  In crafting this RFC, the ALJ stated she considered plaintiff's intense, persistent, and limiting symptoms alongside the medical evidence and opinions of plaintiff's examining physicians.  (AT 30-35.)  This information included plaintiff's treatment regimen, daily activities, and oral and written testimony regarding alleged physical impairments,.  (AT 30-31.)  This information also included plaintiff's treatment records (AT 31, 33-34), the medical opinions of the state agency medical consultants and a consultative

examiner regarding plaintiff's physical impairments (AT 34-35), and a third-party report from plaintiff's friend (AT 32). The ALJ found the State agency consultants' opinions persuasive on the issue of plaintiff's physical impairments. (AT 34-35.) However, the ALJ found the consultative examiner Dr. Harris's opinion regarding potential mental impairments (that plaintiff's "severe response to chemicals, dust, fumes and gases was likely due to a psychological response") was unpersuasive as inconsistent with the doctor's objective findings and "outside of [his] area of practice[.]" (AT 35.) The ALJ concluded plaintiff was capable of performing past relevant work as a claims clerk and administrative clerk, and was therefore not disabled. (AT 35-37.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 1, 19, 20, 21.)

**III.    ISSUES PRESENTED**

Plaintiff argues two issues on appeal that are, in effect, related. Plaintiff contends the ALJ breached the heightened duty to ensure the record was fully and fairly developed regarding her psychologically-based impairments, especially given her unrepresented status at the hearing. Plaintiff seeks a remand for a new hearing. (ECF Nos. 19, 21.)

The Commissioner disagrees, arguing the ALJ properly advised plaintiff of her right to representation, which she validly waived, and otherwise properly made sure the record was fully developed. Thus, the Commissioner contends the decision as a whole is supported by substantial evidence. (ECF No. 20.)

**IV.    DISCUSSION**

At its core, the issue in this case is one of an ALJ's duty to supplement the record when evidence suggests a mental impairment that goes unresolved.

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, the ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (cleaned up). This duty is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence. Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001). The duty is heightened where the claimant may have a mental illness and thus be unable to protect her own interests. Tonapetyan, 242 F.3d at 1150. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. Where a claimant contends the ALJ failed to supplement the record, it is her burden to show prejudice. McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011).

In Tonapetyan, one of the claimant's psychiatrists diagnosed her with schizophrenia. 242 F.3d at 1150. A psychological consultant diagnosed the claimant with mild depression, but was equivocal about whether she also had schizophrenia. Id. The ALJ rejected the psychiatrist's diagnosis as unsupported by the record, and relied upon the consultant's opinion in disregarding plaintiff's claim of schizophrenia. Id. The Ninth Circuit reversed, holding the evidence of the claimant's schizophrenia triggered the ALJ's duty to supplement the record. Id.; see also Garcia v. Comm'r, 768 F.3d 925 (9th Cir. 2014) (where the ALJ relied upon medical records, including partial IQ scores, in assessing the claimant's mental impairments, the ALJ failed in his duty to supplement where a "fully and fairly developed record [would] include a complete set of IQ scores that report verbal, non-verbal, and full-scale abilities."); Smolen, 80 F.3d at 1288 (where a physician indicated a claimant's condition could have a material impact on the disability decision, the court ordered remand for the ALJ to further investigate).

However, not every instance of an allegedly-ignored impairment requires a remand. For example, in McLeod, the Ninth Circuit stated that the ALJ's duty was not triggered where "substantially all of [the physicians'] medical records throughout the time they treated [claimant] were before the ALJ. There was nothing unclear or ambiguous about what they said." 640 F.3d at 884; see also Mayes, 276 F.3d at 462 (finding the district court did not err in denying remand based on an alleged failure of the ALJ to supplement the record, where the plaintiff's back pain was not at issue in the hearing and where plaintiff lacked good cause for her failure to present evidence of her back pain); Celaya v. Halter, 332 F.3d 1177, 1185-86 (9th Cir. 2003) (Rawlinson, J., dissenting) ("The majority would require the ALJ to survey the reported symptoms for

5

'implicitly raised disabilities that are 'at least close' to the listing criteria, while remaining alert to the existence of a disability that no medical provider ever detected. This approach would transform Social Security administrative hearings into seance-like proceedings where the ALJ must divine implicit impairments, diagnose disabilities lying close to the listing criterion and detect any aura compelling further development of the record.").

On the record here, this case falls in between those remanding and those with substantial evidence supporting affirmance. As the Commissioner notes, the ALJ confronted the record presented to him and thoroughly discussed plaintiff's examinations and medical records. (AT 33-34, citing AT 414 (May 2017 consultation with Dr. Sakamuri noting normal mental status), AT 762 (January 2018 consultation with Dr. Albolny noting "normal mood and affect"), AT 785 (May 2018 visit noting normal judgment, mood, insight, and affect).) The ALJ also did not wholly ignore Dr. Harris's opinion that the source of plaintiff's "[s]evere response to chemicals, dust, fumes and gasses [was] likely due to a psychological fear" (AT 620), explicitly finding it unpersuasive. (AT 35.) Finally, the undersigned is cognizant that throughout her proceedings, plaintiff alleged only physical impairments. (See AT 63 (plaintiff's application alleging "Left side muscle atrophy-weakness and pain; Chronic pain; Chronic fatigue; Multi-joint tendinitis; Heart beat irregularities; Multiple Chemical Sensitivity; Widespread nerve pain; Difficulty walking at times; Cognitive issues from neck pain; [and] Arthritic shoulders and spine"); AT 47-53 (transcript of oral hearing, where plaintiff only discussed her alleged physical impairments). This record calls to mind Judge Rawlinson's warning about séance-like proceedings. Celaya, 332 F.3d at 1185-86. Thus, save for the Ninth Circuit's forgiving rule regarding an ALJ's duty to fully develop the record, especially where mental illness may be at play, Tonapetyan, 242 F.3d at 1150, the court would have no issue finding that plaintiff failed in her burden to raise the issue with the ALJ and support it with appropriate evidence. Smolen, 80 F.3d at 1288 ("The claimant has the burden of proving that she is disabled.").

Despite this fact, the court notes a few compelling facts that ultimately tip the scales in favor of remand. First, even though plaintiff herself failed to make mention of any potential mental impairments, a number of her doctors did. Most prominently was of course Dr. Harris in

his report after the March 2019 exam. (AT 616-20.) The ALJ found Dr. Harris's opinion, that plaintiff's smell sensitivities might be psychologically based, unpersuasive as outside his area of practice and inconsistent with his objective findings noted during his evaluation of plaintiff. (AT 35.) This rejection is not in and of itself errant, as the 2017 revisions to the regulations authorize this approach. See 20 C.F.R. § 1520c(c) (noting the ALJ considers multiple factors when weighing a medical source opinion, including (2) consistency and (4) specialization). However, Dr. Harris's opinion does constitute evidence in the record of potential mental-health issues, indicating an opinion from a practitioner with expertise could be warranted. Further, as plaintiff notes, Dr. Harris's opinion on this matter was not the only indication a mental condition may have fallen through the cracks. (See ECF No. 21 at fn.8, concisely listing portions of the record where numerous medical practitioners noted apparent psychologically-based conditions). Other instances in the record include medical sources' findings of depressive disorder (AT 875), "cognitive/emotional overlay," (AT 523), and functional neurological disorder (AT 420-21, 520, 807), the last of which appears to contain both physical and psychological components. See, e.g., Susan H. v. Kijakazi, 2021 WL 5326410, at *5 (D. Alaska Nov. 16, 2021) (remanding for consideration of FND where the claimant had not alleged this condition at the ALJ-review stage but where a medical source had diagnosed the condition, and specifically noting the dual nature of the condition). The record also contained multiple instances of generalized anxiety and emotional outbursts at her medical appointments (see, e.g., AT 652, 857) and recommendations from medical sources for, e.g., psychotherapy or counseling (AT 415). Thus, this case is distinguishable from those with no evidence in the record, as was Judge Rawlinson's concern. Celaya, 332 F.3d at 1185-86. Despite these records, no mental examination was ordered, and the ALJ did not discuss or resolve whether plaintiff had mental impairments that affect her ability to work. He should have, especially given plaintiff's unrepresented state. See Garcia, 768 F.3d at 930-34 (ambiguity in the medical evidence triggers the ALJ's duty to supplement the record); Tonapetyan, 242 F.3d at 1150; see also Reeves v. Kijakazi, 2021 WL 5354104 (W.D. Okla. Nov. 16, 2021) (finding the ALJ should have ordered a consultative exam on potential mental impairments where there was sufficient evidence in the record to suggest such impairments).

7

Additionally, the court finds this failure to develop the record prejudiced plaintiff. The ALJ appears to have formulated plaintiff's RFC without consideration of the effect of any mental impairments, including whether any somatoform disorder affects her residual functional capacity. See Garcia, 768 F.3d at 930-34; see also, e.g., Williams v. Berryhill, 682 Fed. Appx. 665 (9th Cir. 2017) (noting how somatoform disorders are linked to mental conditions, and ordering remand where evidence suggesting such a disorder triggered a step-two analysis or consideration of any severe and non-severe conditions in a plaintiff's RFC). The undersigned finds the ALJ's failure to explore this topic (most easily by ordering a consultative exam on the potential mental impairments evident in the record) requires remand. Edlund, 253 F. 3d at 1156 (ambiguities in plaintiff's medical records are for the ALJ, and not the court, to resolve).

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) be GRANTED;
2. The Commissioner's cross-motion (ECF No. 20) be DENIED;
3. The final decision of the Commissioner be REVERSED, and the case be REMANDED to the Commissioner for further proceedings; and
4. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: May 24, 2022

oroz.321

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE